IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br><br><br><br>    vs.<br><br><br>JESUS ARTURO GEORGE-RODRIGUEZ,<br><br>    Defendant. | MEMORANDUM DECISION AND<br>ORDER ON REVIEW OF ORDER OF<br>MAGISTRATE JUDGE RELEASING<br>DEFENDANT PENDING TRIAL<br><br><br><br><br>Case No. 2:13-CR-378 TS |

This matter is before the Court on the government's request to review the release order issued by the Magistrate Judge. For the reasons discussed below, the Court finds that no condition or combination of conditions will reasonably assure the appearance of Defendant and the safety of any other person and the community. Therefore, Defendant will be ordered detained pending trial.

## I.  PROCEDURAL HISTORY

On May 29, 2013, Defendant was charged in an Indictment with aggravated sexual abuse of a child within Indian country in violation of 18 U.S.C. §§ 2241(c) and 1152. On May 30, 2013, the Magistrate Judge conducted an arraignment and detention hearing. The Magistrate

Judge continued the detention hearing to the following day to allow pretrial services to investigate a possible living arrangement for Defendant.  On May 31, 2013, the detention hearing continued, after which the Magistrate Judge ordered Defendant detained.  The Magistrate Judge found that Defendant was a risk of non-appearance and a risk of danger to the community.

On June 5, 2013, Defendant moved to re-open the detention hearing, stating that Defendant's brothers and sister-in-law had agreed to allow Defendant to reside with them.  The Magistrate Judge held another detention hearing on June 10, 2010.  The Magistrate Judge took the matter under advisement and, on June 18, 2013, ordered Defendant be released on certain conditions.  That same day, the Magistrate Judge granted the government's request to stay the order of release pending review by this Court.

This Court conducted its own evidentiary hearing on the issue of detention on June 24, 2013.  In addition, the Court has listened to the three hearings conducted by the Magistrate Judge, which were supplied by Defendant's counsel.

## II.  FACTUAL BACKGROUND

The facts giving rise to this case concern the alleged sexual abuse by Defendant of his six-year-old step-daughter ("AA") on the Goshute Reservation.  AA reported the alleged sexual abuse to her grandmother, who in turn contacted law enforcement.

On May 19, 2013, AA was examined at Primary Children's Hospital.  An examination revealed an imperforate hymen and a dilated anus.[1]  In conjunction with the examination, an interview was conducted.  During the interview, AA made a number of statements, such as

---

[1]June 24, 2013 Hrg. Ex. 2.

"When my mom's sleeping @ night he does nasty stuff to me" and "he does sex w/ me."  AA stated that Defendant "has all of his clothes off" and "he takes my pajamas off."  She stated that "he's touching this part of my body," pointing to "where she goes pee pee."  He also "touches me inside" and "touches me (points to bum) here" "with his hands."  Additionally, AA stated that "he puts his" "where he goes pee-pee in my bum."

On the night of May 20, 2013, FBI agents traveled to Wendover, Utah to interview Defendant.  The agents arrived at Defendant's house around 11:00 p.m. and brought Defendant to the Wendover Public Safety Building to be questioned.  In all, Defendant was interviewed for about three hours.  During the interview, Defendant was told that he was free to leave.  The interview was conducted in English, which the agents testified Defendant understood, though Defendant related that he sometimes had difficulty expressing himself in English.  Towards the end of the interview, Defendant asked the officers if they had a "Spanish person," presumably an interpreter.

At the end of the interview, Defendant asked whether they were done.  Special Agent Jeff Ross informed Defendant that he could leave at any time.  Defendant began to leave, then asked if the officers were going to give him a ride home.  Agent Ross stated that he was not planning to do so, and the conversation continued.  At some point, Defendant admitted that he had abused AA, but stated that it did not happen the way she said it happened.  Defendant admitted that several months prior to the alleged abuse, he began having sexual thoughts concerning his step-daughter.  On the night the abuse allegedly occurred, Defendant was sleeping next to his wife.  Defendant stated that he woke up aroused and went to where his step-daughter was sleeping.

Defendant stated that he began touching his step-daughter until his wife woke up and called for him.

Defendant was not arrested at this point and officers agreed to give him a ride home. During the drive, Defendant and the officers continued to talk.  Defendant was becoming emotional and Agent Ross suggested that he may want to write down what he had done.

Defendant agreed to provide a written statement and the agents asked Defendant some clarifying questions.  Defendant's written statement says:

> look I sexually assaulted my stepdaughter . . . by placing my hands in her ass and rubbe [sic] it not in her butt hole I didn't ever penetrate anything into her and it happen[ed] . . . whith [sic] my hand it was only one time and I didn't ever sleep with her or either pull down my pants because just of a wrong thought that I had that one night[.]  It didn't ever happen again[] because I reallyze [sic] I was wrong.  I didn't do it to no one else.[2]

Based on prior experiences, Special Agent Ross became concerned that Defendant may become suicidal.  Agent Ross asked Defendant if he was considering suicide and Defendant stated he was.  When asked if he had ever attempted suicide in the past, Defendant admitted he had and showed Agent Ross scars on his wrists.  Agent Ross asked if Defendant would be willing to go to a hospital for evaluation and Defendant agreed.

Before returning to Salt Lake City, the agents met at a gas station.  Around this time, Defendant said that he wanted to hurt himself and requested the officers place him in handcuffs. When the officers attempted to do so, Defendant became rigid and it took four officers to place him in handcuffs.

---

[2]June 24, 2013 Hrg. Ex.1.

The decision was then made to bring Defendant to Salt Lake City for booking, rather than an evaluation.  During the trip to Salt Lake City, Defendant became increasingly aggressive. Agent Ross testified that he was concerned that Defendant would hurt one of the other occupants of the van.  Defendant made a statement that if he (Defendant) attacked the officers it was because he wanted the officers to hurt or kill him.

In addition to the above, the Court would note that Defendant is a citizen of Mexico. Defendant has been in the United States for approximately eight years and has permanent resident status.  There is some evidence that Defendant has stated in the past that if he got in trouble or had problems with his immigration status, he would return to Mexico.  An investigator with the Federal Public Defender testified that Defendant's wife stated that Defendant's threats to return to Mexico were a sort of running joke between the two of them.

## III.  DISCUSSION

18 U.S.C. § 3145(a)(1) provides: "If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release."  DUCrimR 57-16(a)(1) provides that any party is entitled to appeal a Magistrate Judge's order releasing a Defendant and that the appeal will be timely scheduled for de novo review.

The Court conducts its own de novo review of the detention issue giving no deference to the Magistrate Judge's findings or conclusions.[3]  In so doing, the Court may elect to start from scratch and take evidence—whether or not new evidence is proffered—and also may incorporate the record of the proceedings conducted by the Magistrate Judge, including any exhibits.[4]

In making its determination, this Court, like the Magistrate Judge, is governed by the standards set forth in 18 U.S.C. § 3142.  Under that statute, an accused is ordinarily entitled to pretrial release, with or without conditions, unless the Court finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.[5]

In certain cases, however, the presumption shifts.

Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense involving a minor victim under section . . . 2241 . . . of this title.[6]

In this case, Defendant is charged in an Indictment with a violation of 18 U.S.C. §§ 2241(c) and 1152.  The Indictment is sufficient to establish a finding of probable cause that

---

[3]DUCrimR 57-16(a)(1) (providing for de novo review of detention orders); *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002); *see also United States v. Cisneros*,  328 F.3d 610, 616 n.1 (10th Cir. 2003) (holding that district court's review under subsection (a) of § 3145 is de novo).

[4]*Lutz*, 207 F. Supp. 2d at 1251.

[5]18 U.S.C. § 3142(b), (c), and (e).

[6]18 U.S.C. § 3142(e)(3)(E).

Defendant committed an offense involving a minor victim under 18 U.S.C. § 2241.[7]  Thus,

detention is presumed in this case.

> Once the presumption is invoked, the burden of production shifts to the defendant.
> However, the burden of persuasion regarding risk-of-flight and danger to the
> community always remains with the government.  The defendant's burden of
> production is not heavy, but some evidence must be produced.  Even if a
> defendant's burden of production is met, the presumption remains a factor for
> consideration by the district court in determining whether to release or detain.[8]

For purposes of this Order, the Court finds that Defendant has met his burden of

production.  Thus, the burden of persuasion remains with the government.  However, the

presumption remains a factor the Court is to consider.  The government must prove risk of flight

by a preponderance of the evidence and it must prove dangerousness to any other person or to the

community by clear and convincing evidence.[9]

To determine whether there are conditions of release that will reasonably assure the

appearance of Defendant and the safety of any other person and the community, the Court

considers the following:

> (1) The nature and circumstances of the offense charged . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties,
>> employment, financial resources, length of residence in the community,
>> community ties, past conduct, history relating to drug or alcohol abuse, criminal
>> history, and record concerning appearance at court proceedings; and

---

[7] *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).

[8] *Id*. at 1354-55.

[9] *Cisneros*, 328 F.3d at 616.

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .[10]

## A.   NATURE AND CIRCUMSTANCES OF THE OFFENSE CHARGED

The Court first considers the nature and circumstance of the offense charged.  As stated, Defendant is charged with aggravated sexual abuse of a child within Indian country in violation of 18 U.S.C. §§ 2241(c) and 1152.  There can be no doubt that this is a serious offense.  Both the nature of this offense generally and the alleged facts of this case in particular demonstrate the seriousness of this offense.

As the government points out, this offense carries with it a minimum mandatory sentence of 30 years.  This fact reveals that Congress believed this to be a serious offense.  The Court agrees with this assessment.  Defendant makes much of the fact that there are other crimes that carry similar penalties.  This argument misses the point.  The fact that other crimes may carry similarly strict penalties does not take away from the seriousness of this offense.  Regardless of whether other crimes have similar penalties, this remains a serious offense.

Further, the allegations presented in this case, like all sexual abuse cases, are troubling. Defendant is alleged to have sexually assaulted his six-year-old stepdaughter.  Specifically, Defendant is alleged to have inserted his penis into her anus.  Defendant argues that this statement is "hyperbole" and that there is no evidence that "Defendant sodomized or otherwise

---

[10]18 U.S.C. § 3142(g).

placed his penis in his step daughter's anus."[11]  Defendant states that "[s]uch is a blatant misstatement by the government, without evidentiary support."[12]

Despite Defendant's own hyperbole, the evidence provided to the Court reveals that AA did state that Defendant put "where he goes pee-pee in my bum" and that he had done so "lots of times."[13]  The Court cannot interpret these words in any way other than that represented by the government.  Thus, there is evidentiary support for the government's contention that Defendant sodomized his step-daughter.

B.      WEIGHT OF THE EVIDENCE AGAINST THE PERSON

The Court next considers the weight of the evidence against Defendant.  The Court is mindful that the Bail Reform Act  is not to be "construed as modifying or limiting the presumption of innocence."[14]  However, the weight of the evidence against Defendant is strong.

The Court has statements from AA stating that Defendant sexually abused her. Additionally, the Court has been provided Defendant's written statement wherein he admits that he sexually assaulted his stepdaughter.  Finally, the Court has been presented with physical evidence, which helps to corroborate both the victim's and Defendant's statements.

---

[11]Docket No. 37, at 15.

[12]*Id.*

[13]June 24, 2013 Hrg. Ex. 2.

[14]18 U.S.C. § 3142(j).

The Court recognizes that the Magistrate Judge found Defendant's confession "less than clear-cut" and afforded it "some weight but does not find it controlling of this decision."[15]  The Court respectfully disagrees.  While the ultimate issue of whether the confession can be used as evidence at trial will be decided another day, the Court finds it to be an important piece of evidence in determining the issue of detention.  Further, the Court has not heard any evidence, as of this point, to call Defendant's confession into doubt.

The Court further recognizes that there are differences between AA's statements and Defendant's confession.  However, there is at least one aspect that is consistent.  AA stated that Defendant "touches me (points to bum) here" "with his hands."[16]  Defendant similarly stated that he sexually assaulted AA "by placing my hand in her ass."[17]  While the differences between their statements will surely be the subject of further proceedings, the Court finds the similarities to be important.

The Court also recognizes that the physical evidence relied upon by the government may also be indicative of something other than sexual assault.  However, the fact that there is some physical evidence to support the statements of the victim and Defendant is important to the Court's consideration of the weight of the evidence.

---

[15]Docket No. 22, at 7.

[16]June 24, 2013 Hrg. Ex. 2.

[17]June 24, 2013 Hrg. Ex. 1.

C.    HISTORY AND CHARACTERISTICS OF THE PERSON

Next the Court considers Defendant's history and characteristics, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."[18]

Defendant has no criminal history and there is nothing to suggest that he has engaged in conduct similar to the charged offense in the past.

Defendant is a citizen of Mexico.  Defendant came to the United States in 2005 and has obtained permanent resident status.  Prior to his arrest, Defendant was living and working in West Wendover, Nevada.  Defendant's wife and stepdaughter also live in that area, though there is some indication that they may be living on the Goshute Reservation.  Defendant also has family ties to both Wendover and Salt Lake City.  Defendant's brothers and sister-in-law in Salt Lake City have agreed that Defendant could live with them, if released.

There is some evidence that Defendant has stated that, if he were to get in trouble or have issues with his immigration status, he would return to Mexico.  Defendant, however, has presented evidence that Defendant made these comments in jest.  In addition, Defendant has agreed to sign an extradition waiver.

The Court finds that Defendant's ties to Mexico, along with his statements (even if made in a joking manner) provide evidence that Defendant poses a risk of non-appearance.  This is

---

[18]18 U.S.C. § 3142(g)(3)(A).

11

especially true considering the nature of the crime and the amount of prison time at issue, if Defendant is convicted.

In addition to Defendant's ties to Mexico, Defendant's mental health also presents a concern. As set forth above, Special Agent Ross was concerned that Defendant may have been contemplating suicide on the night of his arrest, something Defendant himself confirmed. Defendant's actions that night reveal that Defendant poses a danger to himself and others who may be around him, particularly law enforcement.

Defendant argues that any risk of suicide should not be considered in making a dangerousness determination. Defendant is correct that detention is only permitted when "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of *any other person* and the community."[19] However, the Court is required to consider Defendant's mental condition and, under § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to *any person* or the community."[20] These provisions permit the Court to consider the danger Defendant may pose to himself. Thus, while the statute does not appear to permit the Court to detain a defendant based solely on the risk of suicide, it is nonetheless a factor to be considered. Further, even if it is inappropriate for the Court to consider suicidal ideation in its dangerousness determination, it

---

[19]18 U.S.C. § 3142(e)(1) (emphasis added).

[20]18 U.S.C. § 3142(g)(4).

is certainly permissible for the Court to consider that fact in determining Defendant's risk on non-appearance.[21]

Defendant further argues that his mental health has improved while in custody. Defendant argues that he suffered a breakdown on the night of his arrest and that he is doing better now.  The Court is encouraged that Defendant's mental condition has improved  and recommends that Defendant continue to seek treatment while in custody.  However, based on his actions on the night of his arrest, the Court remains concerned that Defendant remains a risk of danger, not only to himself, but to those around him, especially when faced with stressful situations.

D.    THE NATURE AND SERIOUSNESS OF THE DANGER TO ANY PERSON OR THE COMMUNITY

Finally, the Court considers the nature and seriousness of the danger to any person or the community posed by Defendant's release.  Based upon all of the above, the Court finds that Defendant would pose a serious danger to the victim, himself, and the community if released.

The Magistrate Judge found that Defendant's wife, the victim's mother, would take steps to protect the victim from further harm from Defendant.  However, it was represented to this Court that Defendant's wife wanted Defendant released so that he could provide support for their family.  Further, at least some of the alleged abuse occurred while Defendant's wife was in the home.  Thus, her ability to protect AA is unclear.  Further, Defendant's actions when he was

---

[21]*See United States v. Metz*, 2012 WL 6632501, at *4 (W.D.N.Y. Dec. 12, 2012).

13

arrested call into question his mental stability, causing additional concern that Defendant may pose a danger if released.

Based on all of the evidence presented, the Court finds that there are no conditions or combination of conditions that will reasonably assure the appearance of Defendant as required and the safety of any other person and the community.  The Court is not convinced that those conditions relied upon by the Magistrate Judge, such as Defendant's ability to live with his family in Salt Lake City and his willingness to sign an extradition waiver, are sufficient to either assure Defendant's appearance or the safety of any other person and the community.  The Court is further convinced that detention is necessary, based on the nature and circumstances of the offense, the weight of the evidence against Defendant, Defendant's history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release.  Therefore, Defendant will be detained pending trial.

IV.  CONCLUSION

Based on the above, it is therefore

ORDERED that the Magistrate Judge's Order Granting Motion for Review of Detention (Docket Nos. 22 and 23) is REVERSED.

Defendant is ordered DETAINED pending trial.

DATED   June 26, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge

14